LAWRENCE P. ZATKOFF, District Judge,
concurring.
I write separately because, although I concur in the ultimate result, I respectfully disagree with the majority’s findings regarding four of the alleged violations of section 8(a)(1).
First, the ALJ and the Board determined that CBC president James Appold made inappropriate comments in violation of section 8(a)(1). Appold told employees that “when you begin to bargain you start from zero, you don’t start from where you’re at and bargain. Forward, from that point you start with a clean slate.” One of Appold’s employees, Tyrone Holly, explained that Appold described the situation as one of “give and take” and further indicated that previously enjoyed perks such as turkeys, hams, and the cookie box would probably disappear. Appold also allegedly showed employees pictures of vandalism at the facility and attributed the vandalism to union supporters. The ALJ discredited much of Holly’s testimony because it was directly contradicted by another employee. Holly’s statements relaying Appold’s comments on the bargaining process, however, were found to be credible because, according to the ALJ, those statements were not “directly” contradicted by another employee.
The lawfulness of statements regarding the nature of the bargaining process depends on the context in which they are made. Somerset Welding & Steel, Inc., 314 N.L.R.B. 829, 832 (1994). Employers may not make statements “in a coercive context or in a manner designed to convey to employees a threat that they will be deprived of existing benefits if they vote for the union.” Id. Employers may otherwise state their “side of the case” against unionization. Id. The propriety of employer statements often teeters on a *441 fine line, especially when considering the variety of subjective interpretations that any given statement might evoke. Stating that bargaining will start from scratch, in and of itself, does not render an employer’s comments improper. In this case, the ALJ determined that Appold’s comments were coercive and improper based largely on the testimony of an individual whom the ALJ discredited on other matters because his testimony was directly contradicted. Despite Holly’s incredibility on other matters, the portion of his testimony regarding Appold’s comments was not discredited because it was not “directly” contradicted. Although the majority makes a strong case for affirming the ALJ and the Board, I would hold that this alleged violation is not supported by substantial evidence.
Second, the ALJ and the Board found that Susan Henry made inappropriate comments in violation of section 8(a)(1). Henry, a line supervisor, asked a pro-union employee: “[A]re you telling these people that they could lose their Christmas bonus[?]” The majority observes that “[considering this statement from an employee’s point of view, this statement would seem to have a ‘reasonable tendency to coerce’ an employee.” Although the employee to whom Henry spoke was retired, the majority’s position is bolstered by the fact that the “statement was apparently made within earshot of a current employee.”
As with any election, each side must have the opportunity to argue its position and observe the shortcomings of its opponents. In the context of union elections, employers have a right “to point out ... the adverse consequences of unionization.” NLRB v. Village IX, Inc., 723 F.2d 1360, 1367 (7th Cir.1983). Here, Henry asked a retired pro-union employee about a potential outcome of the union election. When employment bargaining begins anew, as it does when a union is elected, any number of possibilities may result, including the loss of certain benefits as well as the gain of certain other benefits. Despite the guidance of related decisions for employers to frame their statements carefully to avoid coercion, the legitimacy of drawing a “could/would” distinction for employer speech is unclear. The majority interprets Medical Center of Ocean County, 315 N.L.R.B. 1150, 1154 (1994), as eliminating the impact of the could/would distinction. The Medical Center opinion involved a number of circumstances that led to the Board’s decision, including that the conversation at issue occurred “in the presence of a one-on-one conversation behind closed doors at the summons and instance of the supervisor, and in the absence of any suggestion that the loss of benefits which ‘could’ result was to be derived from negotiations in the give-and-take of collective bargaining.” Id. The Medical Center decision also involved the supervisor’s comment that employees could lose “just about everything.” I am of the opinion that the underlying circumstances of Medical Center differ from those present in this case and do not give rise to a blanket abandonment of the “could/would” distinction. Without more, I would hold that Henry’s comments are permissible and do not constitute a violation of section 8(a)(1).
Third, the ALJ and the Board concluded that supervisor James Keller unlawfully threatened plant closure in the event of unionization. This finding rests almost entirely on the observation that “CBC asked Keller carefully crafted questions that allowed him to avoid addressing the incident.”
Although strict limitations govern appellate court review of agency credibility determinations, the agency’s credibility determinations must have a rational basis. See, e.g., Fluor Daniel, Inc. v. NLRB, 332 F.3d 961, 967 (6th Cir.2003). Leading *442 questions have occasionally been considered in credibility determinations, but they generally operate as enhancing factors to other evidence supporting incredibility. See, e.g., NLRB v. Tecmec, Inc., No. 92-5550, 1993 WL 100086, at *5, 1993 U.S.App. LEXIS, at *15-16 (6th Cir. Apr. 5, 1993) (“[T]he ALJ discussed the ‘leading questions’ at the end of his analysis as a consideration ‘in addition to [other] circumstances.’ ”). Our legal proceedings afford the opportunity for cross-examination in order to illuminate facts and witness credibility. Given the credence afforded agency credibility determinations, I understand the majority’s position. In the absence of other incredible evidence, however, I am hesitant to affirm a finding that a witness is incredible based solely on the nature of the questions posed.
Finally, the ALJ and the Board determined that Betty Gerren made inappropriate comments in violation of section 8(a)(1). Gerren, a supervisor, told employees who were discussing the union: “You’d better watch what you’re doing. They’re going to get tougher on you. If you get a Union in here, they’ll be watching you.” The “very clear meaning” of Gerren’s words, according to the majority, is threatening in nature.
As observed by the majority, courts have found that “words similar to those used by Gerren constituted threats.” See, e.g., NLRB v. McCullough Env’t Servs., Inc., 5 F.3d 923 (5th Cir.1993). The McCullough court, however, found that “[substantial evidence supports the NLRB’s findings that McCullough violated § 8(a)(1) by threatening its employees with economic reprisals for their union activities.” Id. at 930 (emphasis added). Here, Gerren made no threats of economic reprisal. Although her statements may be construed as warnings of increased discipline, they lack specificity. It occurs to me that a difference exists between the statement that “[t]hey’re going to get tougher on you” and the statement that “all privileges would be cut out.” See id. Although the majority’s interpretation of related case law is a reasonable one, I believe that Gerren’s comments in this instance are too broad to be considered threatening and should not be considered a violation of section 8(a)(1).
Employer and employee behavior conducted in the midst of union elections falls under a cautionary lens. But it must be considered that elections of any nature require open advocacy for all parties. In the union-election context, threatening words and actions must not be tolerated; yet, their prohibition must not be so expansive as to limit the ability of an employer to state its case against unionization. The foregoing instances highlight the difficult nature of cases such as these. Because of the difficulties that arise in distinguishing threat from prediction and possibility, I would hold that unless clearly and explicitly constituting a threat of reprisal, an employer’s words regarding a union election do not violate the Act.